Good morning, Your Honors. Jay Nelson on behalf of Mr. Wessels. I'll do my best to watch my own clock, and I'll try to reserve two minutes for rebuttal. I don't have much time, but with the time I have, I'd like to be ambitious. I'll try to address the standard of review, the prejudice prong, and the justification prong of the due process analysis. Now, with respect to the standard of review, Congress has told this Court that we defer to state court decisions on federal habeas review. State courts forfeit that deference when they misapply the facts and when they misconstrue the governing federal law. Both of those errors occurred in this case, and both compelled the NOVA review of Mr. Wessels' claim. I'd like to focus primarily at this point, if I could, on the legal error. Clearly established federal law holds that recklessness on the part of law enforcement to the detriment of the defendant can merit relief on a pre-accusation delay claim. The state court ignored that standard entirely, never addressed it, never once mentioned it. And that constitutes a decision that results in a decision that's contrary to governing federal law. And it results in the NOVA review of the entire claim. I'd like to emphasize that, if I could, Your Honors. We're asking the Court to apply the NOVA review to the entire claim, not just the second prong of the due process test. This is a balancing test. This is not the kind of test, for example, like Brady, where we tick off the steps one, two, three. Was it favorable evidence? Yes. Was it suppressed? Yes. Was it material? Yes. This is a balancing test. The two prongs of the test are intimately intertwined. So when one side of the scale is skewed by a legal error, it affects the entire analysis. And we contend that results in the NOVA review of the entire claim. To make sure I understand your argument, you're saying that it's not enough that we do the NOVA review as to whether there was recklessness, but further, you want the NOVA review as to the consequence of the recklessness. Absolutely, Your Honor, of the entire claim. It's due to the balancing inquiry. Yeah, I understand the argument. Proceeding to prejudice, Your Honors, I'd like to reemphasize that to some degree, at least a minimal degree of prejudice has been acknowledged by the state courts, and it's been essentially conceded by the Attorney General on appeal. So at that bare minimum, we satisfy the prejudice prong, and the Court should proceed to the justification prong at a bare minimum. But the lower courts and the Attorney General all grossly understate and unreasonably understate the prejudice to Mr. Wessels on both pillars of the state's case. We have the 430 timeline. That's the first pillar of the case. And then we have Monica Biaway, who's the second pillar of the state's case. The delay, in fact, debilitates Mr. Wessels' defense on both pillars of a very weak case. Say again, what was the first pillar? The 430 timeline. Oh, the timeline. The death occurred at about 430. The state's theory that the death occurred at 430 because Carol Walter was incorrect about hearing toys and vehicles backfiring. That's the state's theory of the case. 430 p.m. Yeah, yeah. So the biggie, of course, with the 430 p.m. timeline was James Smith. Now, as we know, he's now a Las Vegas police officer who, at the time of the murder, reported to the police, gave a statement indicating that he overheard David Benno alive and well. No, he overheard a man. He did not see him. He thought he was David Benno. That's right. Yeah. And he accurately described him as the man who drives the Volkswagen Rabbit and frequently slaps his girlfriend. And slaps his wife. It's an unequivocal statement that he thought he was overhearing David Benno. Well, I don't want to say that. He heard arguing from the vicinity of that apartment. He did not see the two people. He identified them as likely to be those people. Right. And the jury never heard that. Right. Now, bear in mind, as background and context, Your Honors, this is concededly, by the Attorney General, by the state, a very thin case. The prosecutor himself referred to his case as a very thin case. The first time the case was tried, it hung 10-2 for acquittal. It is an extraordinarily close case. 10 voted for acquittal? Yes, Your Honor. Or 2 voted for acquittal? 10 voted for acquittal. Okay. It was an extraordinarily close case. And it's precisely the kind of case where even a small amount of prejudice can tip the scales in favor of acquittal or at least another mistrial or some kind of different result. Now, the lower courts have all engaged in what I refer to as mental gymnastics to get around James Smith. The first extraordinarily unreasonable argument is that Mr. Wessels and Francois Chalmant could have just killed Binot whenever, some other time after James Smith reported hearing David Binot alive. That's absolutely an unreasonable determination of fact. The state's own theory of the case was that it occurred at 4.30 p.m. when Kara Walter reported hearing a jalopy backfiring out on the boulevard. That's their theory of the case. Detective Rowe conceded there was no evidence tying Mr. Wessels to the murder if it happened any other time than 4.30. There's no basis in this record to say that they could have just killed him some other time. Unreasonable determination of fact. The other issue, the other argument that has been raised is Mr. Smith. But is it the state's fault that the defense did not properly subpoena Smith? Well, ultimately, Your Honor, they had Smith. The second time they tried to introduce Smith, they came with the appropriate paperwork, and the judge essentially refused to sign it. But there had already been some delay, and I can just sense the judge is saying, you know, too little, too late. If you'd have your subpoena and you had him here, fine. But you're holding me up here, and I'm just not going to let it in. That was the first time, Your Honor, but that wasn't really the issue the second time. They came on with the paperwork, and the basis for excluding him at that point was she said it was irrelevant. It didn't matter. It's speculative. It doesn't matter. I read that. And I really want to take issue with that, and I want to emphasize this point. That argument amounts to that Smith's statement was weaker than Carol Walter's, and Smith could never overcome Carol Walter's. That's the basis of the state court's opinion. That's what the attorney general has repeatedly argued. That is an absolutely unreasonable and false dichotomy. Both Carol Walter and James Smith exonerate Jeremy Wessels. If you actually believe Carol Walter's statement, she heard firecrackers. She heard a cap gun. She heard a vehicle backfiring. No matter how many times they go back to her, no matter how much she knows her upstairs neighbor was murdered with a gunshot to the head, they go back to her three times. She never gives them gunshots. So if you actually believe Carol Walter's. She said they sounded like, right? She never said gunshots. So their theory of the case, Your Honors, is that she was actually wrong. Their theory of the case relied on. Let me interrupt you, if I may. How does the delay in bringing the indictment cause the fact that Smith doesn't come? The judge might have been wrong to exclude Smith. But that's different from the fact of the delay. Connect that up for me. It's directly related to the delay. Did Mr. Wessels move to admit him as a past recollection recorded? Because that's the way Carol Walter came in. He said, at least mitigate the prejudice to me by admitting him as a past recollection recorded. And he got an affidavit, which he was going to get signed, but it wasn't signed. And there was no dispute that Smith remembered there was a murder. And he remember talking to the police, but he couldn't remember anything else. And under California evidence law, that didn't meet the standard for past recollection recorded. And that was the basis she excluded him. Because he forgot. He couldn't lay enough foundation even for a past recollection recorded. So he was excluded as a matter of hearsay law under the state evidence code. That's why he got out. And so it's directly related. There's a direct causal relationship from the delay. He forgot. It was 16 years later. He didn't remember what happened. And that's eminently foreseeable. It's directly related to the delay. And this ties into recklessness. I'm running low on time, so I'd like to emphasize that. I'll move on to the next problem. They knew about Smith. Smith was not the kind of person who maybe was an unknown alibi witness. Somebody they didn't know about. He's in their file. They interviewed him. Detective Scully, who issued the case, admitted he was an exculpatory witness. Detective Scully said, no, no, no. I didn't follow up on Smith because what he was talking about was a fight that occurred after the incident we're investigating. That's a concession that Smith is inconsistent with their theory of the case. If it's inconsistent with their theory of the case, it's exculpatory by definition. So they know he's exculpatory. They delay for 16 years. They never follow up with him. They never reinterview him. They never keep him fresh. And it's absolutely reasonable that he forgets. And he's excluded as a past recollection recorded. He's excluded. He's gone. And so this powerful basis to provide reasonable doubt in an extremely close case is gone. Is it reasonable that a juror could have found reasonable doubt? Is it reasonable that a juror could have thought, yeah, that's reasonable. It's reasonable that James Smith overheard Benno alive. It's reasonable. There are a million reasons it's reasonable. It could have been a reasonable doubt. It was excluded because he forgot.  They knew about him. And they wear two hats. They have a due process obligation, while they're building their own case, to bear in mind what's happening to the defense side. And they know he's exculpatory, and they let him forget. And with that, if I could, Your Honors, I'd like to reserve the rest of my time. Let's hear from the other side, and you have some time. Thank you. Good morning, Your Honors. May it please the Court. I am Min Lee, Deputy Attorney General for Respondent. Your Honors, the district court correctly held that the state court's application of Supreme Court law and its determination of the facts were reasonable, and that is that Wessel's claims of prejudice were speculative or weak at best. What do you do with the initial argument as to whether this is covered by ed for deference or not? The argument is that the state court misunderstood the federal standard, and therefore we go at this de novo. How do you respond? Your Honor, this is under the EDPA standard because the state court properly applied Supreme Court law. Did it properly state Supreme Court law? Well, Your Honor, under LAVASCO, the standard for determining whether pre-indictment delay violates due process is unclear. The only thing that the Supreme Court made clear in that case was that you consider whether the defendant can establish actual prejudice and whether or not the government had a justification for that. The court held that a tactical reason for delaying the case would violate due process if prejudice is shown. Go ahead, please. But didn't the state court rely almost entirely on a deliberate standard as opposed to a reckless standard? No, Your Honor. The court stated that LAVASCO required a tactical reason in order to show due process.  It is a reasonable interpretation because under the LAVASCO standard, it is unclear what level of intent is required by the prosecution other than just delaying for a tactical reason would violate due process. Now, under California law, however, you can establish a due process violation with negligence. And so the reckless, if that is in fact an established law under the Supreme Court, then that would be subsumed under the California standard because under California law, the defendant has a lower burden in essence. If he can show that he suffered prejudice as a result of the delay and that the government was negligent, and the prejudice is so high that the negligence does not outweigh that prejudice, then he can still establish a due process violation. So, Your Honor, when the state court applied the standard, it implicitly applied the reckless standard under the Supreme Court law. And so, Your Honors, this is a correct and reasonable application. And from then, I will proceed on to the prejudice prong. Okay. I'll start off with Smith's statement. Your Honor, Smith, as you noted, did not see David Beno, the victim. He merely heard someone who he described as the person who drove the Volkswagen Rabbit. By contrast, the testimony or the statement of Kara Walters, who lives beneath David Beno's apartment, she heard at approximately 4 to 4.30 voices of people going up to David Beno's apartment. She then heard the music turned up loud. And then she heard two pops. Now, she described it might be firecrackers. It's unclear to her because she didn't see it. But she heard two pops, and then she heard muffled voices after the fact. Her statement is consistent with the forensic evidence at the scene because when responders came to David Beno's apartment that night, the music was still turned on, the lights were off, and when they entered, they saw that David Beno had died. And later on, the autopsy revealed that he died from two gunshot wounds to the head, which is consistent with Kara Walters' statement. Based on these facts, Your Honor, the government proceeded upon the theory that David Beno died approximately 4.30. And so whatever it is that Smith heard is speculation and doesn't establish that Wessels really suffered. Why is it any more speculative than what Smith heard? Well, Your Honor, it's corroborated by the physical evidence at the scene. There's nothing to corroborate the fact that Smith heard Beno other than that he thought he heard somebody sound like the guy who drove the Volkswagen Rabbit. Nothing else establishes or nothing else lends credibility to his statement, whereas Kara Walters, who was closer to the victim at the time of death, she's right beneath him, she heard the voices of at least two or three people, which is consistent with the government's theory that it was Shamam and Wessels who came over to him. But Smith's statement was more specific than I just heard somebody. I heard somebody, the sound coming from the direction of the Beno apartment. And he says he recognizes the voice. In his view, it was the voice of the guy who slapped his girlfriend around and drove the Volkswagen Rabbit. That pretty clearly points to Beno. And Smith is Beno's neighbor, right? Yes, but I don't believe he's as close to Beno's apartment as Kara Walters is. And, well, Your Honor, I believe the exact statement was that he heard them. They were walking in the direction of David Beno's apartment, not that it was coming from the Beno apartment itself. And even so, Your Honor, that is still not as close to David Beno's apartment as Kara Walters was. She was directly beneath him. But if this had been tried, say, three years after the event, so let's give it two years, which then allows Monica to come in and tell her story. We then allow a year to sort of marshal the evidence and get things going. At that point, Smith comes in. I assume that he's capable of remembering, maybe refreshed by his statement.  Yes, Your Honor. I mean, it creates an issue of fact for the jury to sort out. Yes, Your Honor, but stated another way, it also creates an issue for the police to decide whether they should even charge the case going forward, because there were these questions. And that's why the detective, I think Detective Rowe, who was initially on the case— So you're saying if Smith had been available, perhaps they would not have prosecuted the case based upon if he'd been available and with the intact recollection? No, Your Honor. It's a response position that Smith's statement is something that the government considered, and the government felt that in light of Monica Biaway's statement, she needed more corroborating evidence in order to file the case. And implicit in that consideration is also the witnesses of other people. Before Biaway came forward with her statement, there was nothing tying Wessels and Shammam to the scene other than Kara Walter's statement. And so this is all factors that led the government to decide to hold off and try to investigate further. But what finally then tipped the government? Because after Monica comes in with the story, they have Kara Walter's statement, they have Monica's story, and what else do they get finally when they finally decide to bring forward? I think it's only that guy who was the quasi-alibi witness that Francois says, I went out with him afterwards, not during the time, but afterwards, and that guy says, you know, that was a lie, he really wasn't with me. That's the only new thing they have. Yes, Your Honor, but with the passage of time, with numerous detectives trying to find others, for instance, DNA technology advance, and the investigators said that they tried to resubmit the test results, but nothing came forward, and then with the passage of time, I believe it was DDA, who said that, well, look, it's been this long, it doesn't look like anything will come forward at this time, and now we have an inconsistency. We know that Shammam's lying. We don't know why he's lying, but we have this little bit of extra evidence to tip the scale. Now, was that testimony ever introduced at the actual trial? I don't believe so, Your Honor. Oh, that doesn't sound like it's very important proof to the jury. I mean, if they don't even introduce it at trial, that's not a big piece of evidence for the state. Well, Your Honor, I think framing the question is whether there was enough for the prosecution to believe they could go forward. I believe what happened after that was Abdullah was resistant to testify, or he didn't want to talk anymore. I think that goes a little bit into the co-defendant case, Shammam, but presented to the government at the time, they felt that in order to proceed with this case, that was the best that they were going to get. What about this argument? I found this actually a fairly strong argument on the other side. By the time this case finally goes to trial, Monica is out from under because the statute of limitations has run on aiding and abetting, which means then that she can't be impeached on the stand in the normal way, which is to say, well, listen, you were part of this crime as an aider and abetter. Why aren't you being charged? And she's going to have to say, well, I got a deal. Well, she doesn't have a deal anymore. So all of a sudden they've got a much more credible witness, the same story that she's been telling ever since two years after the crime, but now the story can't be impeached. And the only reason it can't be impeached is that they've waited. How do you respond to that? Well, Your Honor, it isn't clear whether the government was going to proceed to charge anything against her anyway, but even if they were and her liability went away with time, she could still be impeached with her involvement in the case. Well, of course, but she can't be impeached in the way that the defense lawyers love to impeach, and quite legitimately so, saying, well, you're getting a benefit for this. She's no longer getting a benefit of refusing to prosecute because she's immune from prosecution given the lapse of time. Yes, Your Honor. And so I think that is implicit in the district court and the state courts deciding that there was some level of prejudice in this case, though weak, and when balanced against the justification that the government gave below and there was extensive testimony by all four detectives explaining why they held off under the standard in Lavasco, it is enough to outweigh any prejudice, the weak prejudice that Wessel suffered in this case. Counsel, Judge Gould, if I could interject a question. Yes, Your Honor. What do you consider is your best Supreme Court case? And maybe it's Lavasco because you mentioned it, but what's your best Supreme Court case that would suggest that the type of prejudice that Wessels may have had here is not sufficient to give relief in the case of pre-indictment delay? Your Honor, Lavasco is very applicable. In Lavasco, I believe the government did not provide any specific facts at the trial level as to their reasons for the delay, and following the delay, no new evidence came to light. Even then, the Supreme Court in Lavasco held that there was enough sound policy reasons in light of the weak prejudice presented there to outweigh any due process violation. Unless this Court has further questions. Going back to the beginning of this argument, your position is that the lower court applied the proper legal standard, did not apply a deliberateness standard, correct? Yes, Your Honor. If we find that the lower court applied a deliberateness standard, then we're in a de novo review, correct? Because that's not the right standard, is it? No, Your Honor. It's not the right standard? If you read the state court to say that only deliberate would violate due process, then no, Your Honor. I mean, I understand the argument that if it's negligence or recklessness, that actually favors the defendant. Yes, Your Honor. But we've got to get the legal standard correct. Yes, Your Honor. So if it's the wrong legal standard, we're not under the AEDPA, we're looking at a de novo review, right? Yes, Your Honor, but they did apply the correct standard in this case by looking at not only recklessness implicit in that, but also negligence. And so it is under the AEDPA standard in this case. I understand that's your position. Thank you. Okay, thank you. Thank you. Now, we've taken the state over. You've saved a minute. Let's put two minutes on the clock. Thank you, Your Honor. I'm going to try to squeeze in five points if I could. Okay. Regarding the standard of review in Supreme Court authority, we've cited the Supreme Court's decision. It's a forfeiture case, but they extensively discussed Lovasco and what Lovasco held. It's $8,850. It could not be clearer. The standard includes recklessness. They extensively examined Lovasco. They rejected the government's argument that Lovasco standard applies in that forfeiture context. They adopted the Barker v. Wingo. They analyzed both standards. They said what Lovasco said. That's a clearly established federal law that governs this case. The other issue is negligence, at least under California law, does not subsume recklessness. We've cited the California authorities from the California Supreme Court and the California Court of Appeal that say, literally, negligence and recklessness are mutually exclusive. They are not only different in degree but also in kind. The way I sort of colloquially understand that is that negligence is sort of garden-variety carelessness. In this case, if these detectives left the case file in the car with the window open and somebody stole it, that would be a negligence issue. Here we have recklessness. They know James Smith is an exculpatory witness. They ignore him. They are myopically focused on Monica Biaway and a 430 timeline. They're not on a search for truth. They exclude exculpatory leads from their review, including Sal Asker, by the way. I also want to disagree with the Carol Walter theory. I embrace Carol Walter. She exonerates Jeremy Allen Wessels. She says she heard firecrackers. She says she heard a car backfiring. She says – No, I don't think she said that. She said, I heard two pops that sounded like. Right, exactly. That's different. There's great symmetry, Your Honor, between Carol Walter and James Smith. They're both neighbors. They both – none of them saw anything. They both reported what they heard within hours of the murder, the same night of the murder. I really have no issue with either of them. And there's a real problem I have with the inconsistent position that the state is taking. Before the jury, they asked the jury to disagree with Carol Walter. They said, no, no, no, she's wrong. She doesn't know what she's talking about. It was gunshots, ladies and gentlemen. It was gunshots. And now when they're faced with a motion to dismiss by Mr. Wessels, it's, oh, yeah. Oh, she kind of has a halo over her head. She can't do no wrong. And James Smith, he doesn't know what he's talking about. They're flip-flopping. In front of the jury, they're disagreeing with Carol Walter. Now they're saying Carol Walter can do no wrong. I asked the court to reject that. And quite frankly, I'd ask the court to stop them from making that argument. It's unfair, and it's wrong. It's a flip-flop. Fourth point. Smith is corroborated, too, by the way. Smith is corroborated by the extensive details we have about David Benno's life. Unfortunately, Mr. Benno was involved in some unsavory activities. That's extensively detailed by his own family members and by other aspects of the investigation. That information is entirely consistent with Mr. Wessels' theory that he was executed by some professional criminal based on his involvement in interstate drug trafficking. So to say that Carol Walter is corroborated... Sal Asker? Sal Asker. His own sister saying that he was traveling to Vegas to deal drugs. And not to mention the infidelity piece. Don't forget. When they find him, the apartment is immaculate. The only two things out of order are his belt buckles undone and his bed was messy. So James Smith says, I heard him fighting with a woman. That kind of sounds like he had a woman in his place to me. At a minimum, it's corroborated. So to say that Carol Walter is corroborated by the physical evidence, but James Smith isn't, is untrue. He's corroborated just as well. It's a tight case. This case is a horse race. Last point. The reason for the delay, to be crystal clear, in our view, is Monica's credibility problems. The government admits it repeatedly. And they're supplemented answering brief page 27, page 28, page 30, page 32. Each detective and issuing deputy district attorney all said the reason this case was not issued was because of Monica's credibility problems. That was it. 16 years pass. The new district attorney decides, whoa, her credibility problems are fixed by the passage of time. She's no longer a scorned lover. She no longer has criminal liability. The credibility problems are fixed. So the only reason they didn't issue the case was fixed. That is the definition of intentionally delaying for a tactical advantage. But the credibility issue cuts both ways. It makes her harder to impeach because she's no longer vulnerable. But it also gives her less incentive to testify because there's no deal. She doesn't need anything anymore. She gets subpoenaed. She has to. No, no. To tell that story. Previously, she needed to tell that story because she was vulnerable to prosecution. And she could tell the story in return for lenient treatment. Now she doesn't need lenient treatment anymore. So there's no reason to tell the same story. But she was stuck with her story. She had told it before. And she gets subpoenaed to testify. She has to testify. And she's going to give whatever her story is. And that's what she did. It's very reasonable to think that a person who's given this story repeatedly over the years would feel compelled not to admit that she'd been lying for the last 16 years. Okay. Got it. Thank you, Your Honor. Thank both sides for good arguments. Thank you, Your Honor.
judges: Christensen, Fletcher, Gould